## WYNNE *v.* SCHNABAUM.

### Opinion delivered April 16, 1906.

1. FACTORS—LIABILITY.—Where cotton was, without instructions, consigned to commission merchants for sale, the consignees are held merely to the exercise of good faith, and are not liable if they sold within a reasonable time for a fair market price. (Page 406.)

2. SAME—HOW MARKET VALUE DETERMINED.—Where cotton was shipped to commission merchants in a certain city to be sold by them, the market value of cotton in that city at the time the cotton was sold determines the price which the cotton must bring. (Page 406.)

3. SAME—LIABILITY—EVIDENCE.—Proof that, during the same season in which cotton was shipped by appellee to appellants to be sold, appellee sold cotton to other parties in the same city and realized more for it than appellants realized for what they sold does not tend to prove that appellants failed to sell within a reasonable time or for a fair market value.   (Page 406.)

Appeal from Randolph Circuit Court; *John W. Meeks,* Judge; reversed.

*G. B. Oliver,* for appellant.

1. A commission merchant is only required to exercise ordinary and reasonable skill and diligence in his employment, and to obtain only the common market price in effecting sales, and is not liable for losses except through failure to use such diligence and skill. 12 Am. & Eng. Enc. Law, 658, and note 2; *Ib.* 667 and note 3; 66 Am. Dec. 316; 18 Ill. App. 273; 6ı Mo. App. 627.

2. The court erred in refusing the second, third and fifth instructions requested by plaintiffs.

*J. B. McCaleb* and *Witt & Schoonover,* for appellee.

1. The instruction complained of, as appears by the corrected record, does not require more than ordinary care and diligence to realize all the plaintiffs reasonably could for the cotton, selling in the customary way.

2. The second, third and fifth instructions requested by plaintiffs were properly refused. They were misleading. Evidence to show the price of cotton in Pocahontas, the relative prices there and in Memphis, and that there was such difference in the prices obtained as to show that plaintiffs did not realize in Memphis the full market price, was competent as tending to establish the defense that plaintiffs did not exercise the ordinary and reasonable care and diligence required of them.

3. A judgment which is right on the whole record will not be reversed for error in charging the jury, nor where substantial justice has been done. 10 Ark. 9; 23 Ark. 115; 46 Ark. 542; 33 Ark. 811.

4. A verdict supported by sufficient evidence or substantially supported by the evidence will not be disturbed on appeal. 18 S. W. 762; 17 S. W. 879; 55 Ark. 31; 51 Ark. 459. See also 57 Ark. 136; 46 Ark. 524; 25 Ark. 89; 15 S. W. 469.

BATTLE, J. This action was brought in the Randolph Circuit Court by Wynne, Love & Company against A. Z. Schnabaum. Plaintiffs allege in their complaint that they are cotton factors and commission merchants, located in the city of Memphis, in the State of Tennessee; that the defendant was a merchant, doing

business at Pocahontas, in this State, and was engaged in buying selling and shipping cotton; that on the 18th of June, 1900, they entered into a contract with him, by which they were to advance and lend to him $2,000, and he was to ship to them 200 bales of cotton, or one bale for each $10 loaned, in default of which shipment he was to pay plaintiffs one dollar and twenty-five cents per bale for each bale he failed to ship according to the terms of the contract; that they loaned him $1,889.50, and he shipped to them only forty-two bales of cotton, and refused to ship the remainder or pay the dollar and twenty five cents as he agreed to do. They asked for judgment against him for $183.75, with interest, on account of such failure to ship.

The defendant answered, and admitted the allegations in the complaint, but denied that he wrongfully failed to ship them more than forty-two bales of cotton, and for defense says that plaintiffs sold the cotton shipped to them for less than its market price, and less than they could have sold it for, and that thereby he suffered and sustained a loss of $10 on each bale of cotton shipped, and that for this reason plaintiffs forfeited their right to insist upon a performance of said contract.

The issues in the case were tried by a jury. The evidence shows that the shipments of the cotton extended from October 25, 1900, to April 8, 1901, and the sale thereof extended from November 1, 1900, to July 3, 1901. J. E. Love, of Wynne, Love & Company, testified that thirty-four bales of it were sold for more than their market price, and two bales of it were sold for less than the market price of such cotton, on account of the extreme low grade thereof and the poor demand for that class of cotton. At another time he testified that "the cotton could not have been sold for any more than plaintiffs got for it; for the market during the entire season of 1900 and 1901 was a dull dragging market, and quotations hard to realize; but quotations in Memphis market were not the market value in every instance during the season of 1900 and 1901, owing to the poor demand for cotton, and concessions had to be made to effect a sale. Some of the cotton was so low in grade, and handled so badly, that there was absolutely no demand for it. Therefore we were unable to realize any premium over quotations, and had to make concessions in order to effect a sale." He made a statement of

the grades of the cotton which shows only nine bales grade mid-
dling. Another statement, which was admitted to be correct
except wherein it was in conflict with the testimony of Love, was
admitted as evidence. It shows that eight bales were sold at
market price of middling, six for more, and twenty-eight for less.
The testimony of the purchasers of the cotton, except one who
did not testify, corroborates the testimony of Love.

Defendant testified, in part, as follows: "During that sea-
son I handled about 1200 bales of cotton. I sold some at Poca-
hontas, some at Newport, and some at Memphis, and during that
year other parties than the plaintiffs sold cotton for me in Mem-
phis. My reason for not shipping more cotton to plaintiffs that
year was that I was realizing more for my cotton by selling at
home than they were getting for me for the same. * * *
*During the time the plaintiffs* were handling this cotton, I made
sales to other parties, and in all cases realized more for cotton
than they did for me. I sold most of my cotton that year at
Pocahontas, and got from ¼ of a cent to a cent per pound
more for it than plaintiffs sold for. *During the time* that plain-
tiffs were selling cotton for me at Memphis I sold cotton to other
parties in Memphis, and realized more for it than the plaintiffs
allowed me for what they sold. I had shipped about 600 bales
of cotton to another party, and sold it myself to a buyer who
came here to Pocahontas."

The plaintiffs asked, and the court refused, to instruct the
jury as follows:

"2. The fact, if proved, that defendant sold cotton in
Pocahontas for more than he realized for the cotton shipped to
and sold by plaintiffs would be no defense in this suit, nor
would it be a defense that defendant sold cotton in Memphis for
which he realized more than for the cotton sold by the plaintiffs.

"3. Defendant by way of defense claims that the plaintiffs
sold his cotton for less than the market price. Before you
could find for him on this issue, he must show, by a preponder-
ance of the evidence, either that plaintiffs failed to use care and
skill in the sale of the cotton, or that they corruptly sold it for less
than its value, and the fact, if proved, that defendant sold cotton
in Pocahontas, so that he realized more for it than for cotton
shipped to and sold by plaintiffs, or that he sold cotton in Mem-

phis otherwise than in the customary manner, for more than he realized for cotton sold by plaintiffs would be no defense in this action.

"5. Defendant claims by way of defense in this suit that plaintiffs sold cotton shipped them for less than he realized for it here in Pocahontas, and for less than he sold cotton in Memphis. You are instructed that this of itself would be no defense to this suit."

The jury returned a verdict in favor of the defendant, and plaintiffs appealed.

Wynne, Love & Company were commission merchants, located in the City of Memphis, in the State of Tennessee. Appellee consigned to them for sale forty-two bales of cotton, without instructions. They thereby became bound, and bound only, to exercise a fair and reasonable discretion, under the circumstances. By consigning cotton without instructions, the presumption is that he relied upon the sound discretion of appellants. If they exercised it fairly and in good faith, and sold the cotton within a reasonable time after they received it, they discharged their duty. But appellee complains only of the price for which they sold the cotton. The measure of their duty in that respect was to sell for the fair value or market price. They were not bound to consult the market of Pocahontas. The cotton was shipped to Memphis, to be sold there according to the market of that city. *Gregory* v. *McDowel,* 8 Wend. 435; *Wemple* v. *Stewart,* 22 Barb. 154; *Durst* v. *Burton,* 47 N. Y. 167; *McCarty* v. *Quimby,* 12 Kan. 494. Neither were they governed by one or two sales of cotton in Memphis, probably unknown to them. Proof of a single sale or two sales in a city like Memphis is not sufficient evidence to establish the market value of the cotton sold. Such evidence could not show that they failed to discharge their duty to appellee. See Mechem on Agency, § § 1016, 1018, 1019; 2 Clark & Skyles on Agency, § § 856-858, and cases cited.

Appellee testified that "during the time that appellants were selling cotton for him in Memphis he sold cotton to other parties in that city and realized more for it than appellants received for what they sold." The time during which appellants were selling cotton for him extended from November 1, 1900, to July 3, 1901, a period of eight months. He fails to show that the sales made

by him in Memphis approximate  any of the days on which appellants sold.  This evidence does not tend to show that they failed to exercise a reasonable degree of discretion and judgment in reference to the time of selling, or that they failed to get the fair value or market price for the cotton sold; and this was the full measure of their duty in that respect.  The prices of cotton are too unsteady, and fluctuate too much, for this evidence to have such effect.

On account of the evidence adduced the instructions asked by the appellants and refused by the court should have been given.

Reverse and remand for a new trial.

HILL, C. J., (dissenting.)  The second instruction given at the instance of appellee and the fourth instruction at instance of appellant presented fully and correctly the law governing the question at issue.

Evidence of sales in Pocahontas should not have been admitted, for the Memphis market was where the cotton was to be sold; but the appellant did not object to this evidence, and after trial and verdict can not assign error for something he acquiesced in at the trial.  Evidence of the sales in Memphis was proper, as tending to prove the allegation of want of due diligence in selling the cotton of appellee for less than the market price.

The second instruction requested by appellant was properly refused, for it singles out the evidence of sales under the market and says their evidence would be no defense.  These sales were not admissible of themselves as constituting a defense, but merely as circumstances tending to prove that the market price of cotton in Memphis was better than received by appellants, at the same time.  Hence it would have been improper to have singled out these facts and minimized their importance as evidence by saying that they did not constitute a defense.

The 5th refused instruction contains the same error, and should not have been given.

There was evidence to sustain the verdict, and in my opinion the judgment should be affirmed.