B. LINCOLN BENEDICT, EXECUTOR, APPELLANT, V. T. L. V. LAND & CATTLE COMPANY ET AL., APPELLEES.

FILED NOVEMBER 6, 1902. NO. 12,232.

Commissioner's opinion, Department No. 2.

1. **Constructive Notice.** Constructive notice can not be imputed from the recording of a document which the statute does not recognize as an instrument that should be recorded.

2. ———. Instruments, to impart constructive notice, must be recorded in their true character.

3. **Garnishment: LIEN.** In a garnishment proceeding, plaintiff does not acquire a clear and full lien upon the specific property in the possession of the garnishee, but acquires only such a lien as gives him the right to hold the garnishee personally liable for the property or its value.

4. **Evidence.** Evidence examined, and *held* sufficient to sustain the judgment of the trial court on the separate answers of the defendants Hake, Valentine and Conway.

5. ———. Evidence examined, and *held* not sufficient to warrant the judgment of the trial court in discharging the defendants Riley, Carpenter and Tierney Bros. from an accounting.

APPEAL from the district court for Logan county. Action in the nature of a creditors' bill. Tried below before GRIMES, J. Decree for defendants. Plaintiff appeals. *Affirmed in part.*

*Hoagland & Hoagland,* for appellant.

*Wilcox & Halligan* and *James H. Woolley, contra.*

OLDHAM, C.

In the year 1886, the T. L. V. Land & Cattle Company (hereinafter called T. L. V. Company) was duly organized as a corporation under the laws of the state of New Jersey, and engaged in the business of buying and selling cattle in the state of Nebraska, with its principal office at Omaha, Nebraska. The company owned a large ranch containing 26 sections of land, situated in the counties

of Logan and Custer, in the state of Nebraska. It also owned a large number of cattle, some horses and agricultural implements, all situated on the lands in Nebraska known as the "T. L. V. Ranch." James E. Riley, one of the defendants herein, gradually accumulated almost the entire stock of the T. L. V. Company, and was president and general manager of that company. In June, 1893, the T. L. V. Company was reorganized as a Nebraska corporation, under the name of the "Central Nebraska Land & Cattle Company" (hereinafter called Central Company); the stock of the T. L. V. Company being exchanged for stock in the latter company, and all the property of the T. L. V. Company being transferred to the Central Company. Prior to the reorganization of the T. L. V. Company, all the lands owned by it were mortgaged to the Fidelity Title & Deposit Company, of Newark, New Jersey, to secure a bona-fide indebtedness of $25,000. The lands owned by the T. L. V. Company were conveyed by warranty deed to the Central Company, subject to the indebtedness of said company, and this deed was filed for record in the counties of Logan and Custer on the 10th day of June, 1893. The personal property was also conveyed by bill of sale, subject to the indebtedness of the T. L. V. Company, and this bill of sale was recorded in the miscellaneous records in said counties on the same day. The plaintiff in this act n was a former stockholder in the T. L. V. Company, and had personal, as well as record, notice of all these transfers. On August 18, 1893, on application of plaintiff, defendant Keasby was appointed receiver of the T. L. V. Company, but he appears to have never taken charge of any of the property of said company, and in fact the record shows that this company had no property other than such as was conveyed to the Central Company.

In December, 1893, plaintiff instituted suit in the district court for Douglas county, Nebraska, against the T. L. V. Company to recover the sum of $13,500 on the indebtedness of said company to him then due. On Jan-

uary 3, 1894, plaintiff, on a proper application, caused
an attachment to issue against the T. L. V. Company in
aid of the suit then pending. Summons was served on de-
fendant the T. L. V. Company, and the sheriff levied the
attachment by serving notice of said attachment and gar-
nishment on James E. Riley, as president of the Central
Company, at Omaha, Nebr. In answer to this summons
in garnishment, Riley, as president of the T. L. V. Com-
pany, alleged that he had in his possession, as president,
all the lands formerly owned by the T. L. V. Company,
situated in Logan and Custer counties, and also the live
stock and farm machinery situated on the T. L. V. ranch,
in said counties. The judge of the district court for Doug-
las county, on this answer being filed, issued an order to
the Central Company to deliver all of the property de-
scribed in the answer to the sheriff of Douglas county.
About the 10th day of January, 1894, copies of this order
in garnishment were filed in the miscellaneous records in
both Logan and Custer counties. Nothing else appears
to have ever been done in this attachment proceeding. No
orders of attachment were ever issued to the sheriff of
either Logan or Custer counties, and no levy was made
other than the summons in garnishment above set out.
Defendant Riley ignored the order of garnishment, and
neither delivered the lands nor the live stock to the sheriff
of Douglas county, but on the contrary he permitted the
lands to remain where they were, and disposed of the
cattle remaining on the ranch to the defendants Hake,
Valentine and Carpenter, in a manner hereafter dis-
cussed. In December, 1894, plaintiff's claim was reduced
to judgment, and proper transcripts of this judgment
were filed in Logan and Custer counties. An execution
was issued on said judgment and returned unsatisfied
prior to the institution of the suit at bar.

October 12, 1897, a petition in the nature of a creditors'
bill was filed by plaintiff, in which all the parties to this
cause of action were made defendants. The petition is
exceedingly lengthy, and sets out the organization and in-

corporation of the T. L. V. Company; the organization of the Cenetral Company; the transfers of property from the T. L. V. Company to the Central Company; the recording of the bills of sale and deeds to the real estate of said company; the mortgage on the lands to the Fidelity Title and Deposit Company; the procuring of the judgment in the district court for Douglas county; the attachment and garnishment proceedings in Douglas county; the levy and return of execution on plaintiff's judgment; the insolvency of each of the companies and of Riley; alleges a fraudulent conspiracy between defendant Riley and the defendants who purchased the property in question for the purpose of hindering, delaying and cheating plaintiff in the collection of his judgment; asks for a cancelation of the deed and bill of sale of the personal property from the T. L. V. Company to the Central Company, and that each of the defendants who purchased property from defendant Riley be required to account to the plaintiff for the value of the property so purchased. The petition also asks for an injunction to restrain defendants Tierney and Tierney Bros. from paying rent for the use and occupancy of the T. L. V. ranch. During the pendency of the suit, the plaintiff, Charles L. Benedict, departed this life, and the suit was revived in the name of his executor. Defendant Keasby, as receiver of the T. L. V. Company, entered his appearance in the action, but filed no answer, and no relief was asked against him. The T. L. V. Company filed no answer. Defendant Carpenter filed a demurrer to the plaintiff's petition, which was overruled, and he appeared no further in the action, and was subsequently defaulted. Each of the other defendants appeared, and filed their separate answers in the cause. Trial was had to the court; a decree was rendered declaring plaintiff's judgment a lien on all the lands and effects of the Central Company, and awarding him execution thereon. The petition was dismissed as to all the other defendants; and plaintiff appeals from said rulings to this court.

We will be compelled to examine the allegations against

the various defendants separately. The first allegation against defendant Valentine, is as to the purchase of about 100 head of cattle. The evidence shows clearly and indisputably that these cattle were purchased and paid for in the ordinary course of business in the spring of 1893, and before any transfer of this property was made, and before any suit had been instituted by plaintiff, and, consequently, there can be no doubt that the finding of the trial court in favor of this defendant on this cause of action was fully warranted. Another allegation of the petition is with reference to the purchase of 580 head of cattle by defendants Hake, Valentine and Conway. The evidence shows clearly and indisputably that in February, 1894, these cattle were purchased for a valuable consideration from defendant Riley, managing officer of both the T. L. V. Company and of the Central Company, by these defendants. It also shows beyond dispute that they had no actual knowledge of any indebtedness of either of these companies to the plaintiff, and that so far as they were concerned, they purchased and paid for these cattle in the utmost good faith. The evidence also shows that the defendant Conway subsequently purchased a part of this herd of cattle from defendant Hake, and that he had no personal knowledge of any indebtedness on the part of either of the companies to the plaintiff, nor any knowledge of any conspiracy between Hake and Riley for the purpose of cheating, delaying or impeding the collection of plaintiff's debt. Appellant admits that there is no testimony tending to show any actual conspiracy in the matter of these purchases, but contends that the record of the bill of sale from the T. L. V. Company to the Central Company, and the record of garnishment proceedings spoken of before, were constructive notice of plaintiff's lien on this property at the time of its purchase.

With reference to the alleged constructive notice by reason of the recording in the miscellaneous records of the order of garnishment of the Douglas county district court, it is sufficient to say that there is no statute in existence

in this state which authorizes the recording of any such instrument, and that before constructive notice can be imputed from a record, it is essential that the instrument imputing notice shall be one which the law provides for having recorded. Wade, Notice, secs. 119, 120; *Hare v. Murphy*, 60 Nebr., 135; *Keeling v. Hoyt*, 31 Nebr., 453.

It is contended by appellant that the bill of sale from the T. L. V. Company to the Central Company operated as a chattel mortgage or conditional sale of all the personal property of the T. L. V. Company. In the first place, the instrument lacks many of the essentials of a chattel mortgage, and in any event is void as against innocent purchasers, because it was not filed and indexed in the office of the county clerk of any county as required by section 14, chapter 32,* Compiled Statutes, commonly called the Statute of Frauds. Again, it fails to impute notice as a contract of conditional sale, because no affidavit is attached to it as required by section 26, chapter 32, Compiled Statutes, nor was it recorded in the manner prescribed by said section. All instruments should be filed for record in their true character. If this one was in reality a chattel mortgage or a conditional sale, it should have been filed as a mortgage, where the searcher for mortgages could go and find it. Wade, Notice, sec. 186; *Sheldon v. Wickham*, 50 N. Y. Sup., 314.

Appellant further contends that, even if notice was not imparted by the recording of these instruments, plaintiff in any event had a lien on the personal property of the T. L. V. Company by reason of the garnishment proceedings in Douglas county, and that the cattle sold to the defendants Hake and Valentine, in February, 1894, were in *custodia legis* at the time of the sale. We are fully convinced that at the time the attachment proceedings were instituted in Douglas county, the plaintiff could have procured a lien on all the effects then in possession of the T. L. V. Company, by having orders of attachment directed to the sheriff of Logan and of Custer counties, where this

---

* Cobbey, Annotated Statutes, sec. 5963.

22

property could then have been found, and levied upon as provided by section 202, Code of Civil Procedure. But we are unable to agree with the contention that under the garnishment proceedings, plaintiff acquired any lien on any specific property beyond the jurisdiction of the district court for Douglas county. As we understand it, in a garnishment proceeding plaintiff does not acquire a clear and full lien upon the specific property in the possession of the garnishee, but acquires only such a lien as gives him the right to hold the garnishee personally liable for the property or its value. Drake, Attachment [7th ed.], sec. 453; Waples, Attachment and Garnishment, sec. 283; *Roberts v. Chicago & N. W. R. Co.,* 77 N. W. Rep. [Wis.], 151; *Wilson v. Sax,* 54 Pac. Rep. [Mont.], 46, 52.

We therefore conclude that the judgment of the district court in dismissing plaintiff's bill as to defendants Hake, Valentine and Conway, was right and should be affirmed.

There is an allegation in plaintiff's petition which charges defendant Charles F. Tierney, or Tierney Bros., with the purchase of certain property of the T. L. V. Company. There is no evidence to support the allegation that any property was purchased from the T. L. V. Company or the Central Company by either Charles F. Tierney or Tierney Bros. There is also a petition for a permanent injunction to restrain Tierney Bros. from paying rent for the occupancy of the T. L. V. ranch. The evidence with reference to the renting of these premises does tend to show that Tierney Bros., on a fair accounting, are indebted for some rent for the use of these premises, and the court below so found, but dissolved the injunction and dismissed the entire petition as to these defendants. We think the court was clearly right in finding that the defendants had purchased no property from either the T. L. V. Company or the Central Company. We also think the court was fully justified in dissolving the injunction restraining Tierney Bros. from paying rent. It seems to us, after reading the testimony of these defendants, that what plaintiff wants is a judicial prod-pole applied to these defendants, to make

them stand up and pay rent, and not an injunction to restrain them from paying; we think, however, that after finding, as the court did, that these parties were indebted for rent, it erred in dismissing the bill as to them, for the reason, as alleged in its findings, that plaintiff had an adequate remedy by garnishment to procure the rent due from these defendants. One of the objects of a creditors' bill is to avoid a multiplicity of suits. In this case the parties were all in court, and these defendants had answered, denying that they were indebted to either of the companies for rent of the premises, and when, after an investigation on the issues thus joined, it was determined that some amount was due from these defendants, they should have been required to account for whatever they owed, unless the evidence totally failed to support the essential allegations of the creditors' bill.

There is an allegation in plaintiff's petition charging that defendant Carpenter, who was foreman and an employee of the T. L. V. Company and of the Central Company, fraudulently purchased thirty-five head of cattle and other property from the defendant Riley, without consideration, and for the purpose of hindering and delaying plaintiff in the collection of his claim. As already stated, Carpenter filed a demurrer to this petition, and when his demurrer was overruled, he took no exception, but defaulted, and made no further appearance. There was evidence in the record tending to show that Carpenter had received property of considerable value from the T. L. V. Company and from the Central Company while in the employ of said companies, and as he defaulted and refused to answer, we think the court erred in dismissing the bill as to him.

From all the evidence contained in the record in this case, we can not understand how the learned trial court discharged defendant Riley from an accounting for the assets of the T. L. V. Company and the Central Company, which the evidence clearly and unmistakably shows that he received. He was the president and managing officer of each of these companies, and as between the stockhold-

ers and creditors of these corporations, he held all their assets in trust for the creditors. The evidence showed also that he was indebted for unpaid subscription stock, and this is admitted in his answer. It is true that the answer of defendant Riley sets up a good defense, but there is no evidence in the bill of exceptions to sustain the allegations of his answer. It is but fair to the trial court to say that the record which we have in this case is in a very unsatisfactory condition, and we are impressed with the fact that there may have been testimony offered in the court below which has not been incorporated in this record. From the evidence contained in the record, it is difficult for us to tell the exact amount for which either the defendants Carpenter, Tierney Bros. or Riley, should account, but it is clear from the evidence before us that an accounting should have been required from each of them.

We therefore recommend that the judgment of the district court be reversed as to defendants Carpenter, Tierney Bros. and Riley, and be affirmed as to the other defendants.

BARNES and POUND, CC., concur.

By the Court: For the reasons stated in the foregoing opinion, the judgment of the district court is reversed as to the defendants Carpenter, Tierney Bros. and Riley, and affirmed as to the other defendants.

JUDGMENT ACCORDINGLY.