Weigand v. Hyde.

---

KRANK WEIGAND ET AL., APPELLEES, V. E. B. HYDE ET AL: W. H. DEVER, INTERVENER, APPELLANT.

FILED FEBRUARY 15, 1923. No. 22181.

1. **Landlord and Tenant:** FRAUD: RELIEF IN EQUITY. Where a lease provides that the lessee shall on demand execute a chattel mortgage on the crops to secure the payment of the rent, but lessee fails to do so, and executes to a third person a first chattel mortgage on the same crops, the execution thereof constitutes a fraud on the part of the lessee, as between himself and the landlord, against which a court of equity may grant relief at the suit of the lessor.

2. ———: FRAUDULENT MORTGAGE OF CROPS: NOTICE. In such case, the mortgagee, if he had notice of the provisions of the lease, and of the landlord's rights thereunder, is not a mortgagee in good faith,

and, in an action by the lessor for specific performance of the terms of the lease, the mortgagee's rights will be subordinated to those of the lessor.

3. ———: ———: ———. Evidence examined, and *held* that the mortgagee had notice of the terms of the lease under which the premises were held, and that he was not a mortgagee in good faith as against the plaintiffs.

APPEAL from the district court for Knox county: WILLIAM V. ALLEN, JUDGE. *Affirmed.*

*W. A. Meserve* and *W. D. Funk,* for appellant.

*P. H. Peterson,* contra.

Heard before LETTON, ROSE, DEAN and DAY, JJ.; REDICK, District Judge.

DAY, J.

On August 9, 1918, the plaintiffs brought this action against the defendants E. B. Hyde & Sons to enjoin them from disposing of any of the crops growing or grown upon the premises leased to the defendants by the plaintiffs, praying that the lease be performed, and that the plaintiffs be given a lien upon the crops growing or grown upon the land for the year 1918 as security for the rent for that year. In this action W. H. Dever intervened and claimed that a chattel mortgage which he held on the crops was a prior lien to the claim of the plaintiffs. The defendants Hyde & Sons made default, and judgment was entered against them. As between the plaintiffs and the intervener, the court found the equities in favor of the plaintiffs; that the intervener had converted the property covered by his mortgage to his own use; that its value was in excess of the plaintiffs' claim; and rendered a personal judgment against the intervener for the amount found to be due the plaintiffs for the rent of the premises. The intervener appeals.

The appeal presents a controversy between the plaintiffs and the intervener, each claiming a priority lien upon the same crops. The plaintiffs' claim rests upon the

provisions of a lease between them and their tenants, E. B. Hyde & Sons. The intervener bases his claim upon a chattel mortgage executed to him by E. B. Hyde.

The record shows that the plaintiffs were the owners of a large tract of land in Knox county, a part of which was devoted to farm purposes; that they leased the same to the defendants for a period of one year beginning March 1, 1916. Notes were executed by the defendants for the rent reserved, which were also signed by the intervener as surety. By oral agreement between the plaintiffs and defendants the lease was extended for another year, the intervener signing the notes for the rent as surety as before. It also appears, although upon this point there is some dispute, that the plaintiffs and defendants agreed that the lease should be extended for the year commencing March 1, 1918, and that intervener should sign the notes for the rent as surety as he had theretofore done; the intervener, however, was not a party to this agreement. The lease was in writing, and, among other things, contained a stipulation, as follows:

"And it is further expressly agreed that the second party shall secure the performance of the terms and conditions of this lease on his part by giving to the first party on demand a chattel mortgage upon all or any part of the crops growing or gathered on said premises during said term."

About the middle of July, 1918, the defendants had not executed the rental notes, and plaintiffs then demanded that notes be signed in accordance with the agreement. The intervener declined to sign the notes. About July 26, 1918, the plaintiffs made a demand upon the defendants for a chattle mortgage upon the crops, as provided for by the terms of the lease. The defendant E. B. Hyde finally agreed to this and fixed the date on which he would meet the plaintiffs and close the matter up. Instead of keeping his promise and performing the conditions of the lease, he executed on July 31, 1918, a chattel mortgage for $2,500 in favor of the intervener,

who was his brother-in-law, upon the crops grown upon the leased premises for that year. A copy of this mortgage was filed for record August 2, 1918. This mortgage was given to secure intervener for advances made to E. B. Hyde & Sons, and to E. B. Hyde, and $200 which was paid to E. B. Hyde at the time of the execution of the chattel mortgage.

Plaintiffs urge that, as the property mortgaged was partnership property, E. B. Hyde had no legal right to secure any of his individual indebtedness by incumbering it. We think, however, that the partnership was dissolved before March 1, 1918, and that E. B. Hyde continued to operate the farm for his individual benefit for that year under the lease; and, except as to the superior rights of plaintiffs as hereinafter shown, he had the right to devote his property to the payment of the debts of the former partnership as well as to his individual debts.

Although there is some dispute upon this point, the evidence shows that at the time the mortgage was executed the intervener had actual notice that the defendant Hyde was holding the premises under a lease containing a clause giving to the plaintiffs the right to demand and receive a chattel mortgage upon the crops grown on the premises to secure the payment of the rent. The intervener was also charged with knowledge that the plaintiffs could enforce this right in an action for specific performance. As between the plaintiffs and the defendant Hyde, the latter was bound in good conscience to live up to the terms of the lease and execute the chattel mortgage to the plaintiffs when demand was made. When, therefore, E. B. Hyde executed the chattel mortgage to his brother-in-law he perpetrated a wrong against the plaintiffs.

To preserve the property it was agreed between the plaintiffs and the intervener, without any prejudice to their respective rights, that the intervener should take possession of the property under his mortgage and sell it, which was done.

Under this state of facts we are called upon to determine, as between the plaintiffs and the intervener, who has the superior equities. It is a well-settled principle that an agreement to give a mortgage for a valuable consideration upon property which is sufficiently specified is in a court of equity regarded as the creation of the mortgage itself. This is held for the reason that equity will treat that as done which ought to be done. And, in such case, a lien will be given precedence over a mortgage or other lien taken by a party who has notice of the rights of the equitable mortgagee. *Bridgeport Electric & Ice Co. v. Meader*, 72 Fed. 115; *Foster Lumber Co. v. Harlan County Bank*, 71 Kan. 158; *Gest v. Packwood*, 39 Fed. 525.

In *Foster Lumber Co. v. Harlan County Bank*, 71 Kan. 158, money was advanced for the purpose of buying a specific tract of land, the borrower orally promising to secure its repayment by a mortgage upon the property when title thereto was obtained. After the title had been procured by the use of the money, the borrower refused to execute the mortgage to the lender and mortgaged the property to a third party who had full knowledge of the rights, claims and equities of the lender. It was held that "equity will regard that as done which the borrower agreed should be done, and which ought to have been done, and will treat the transaction as creating an equitable mortgage upon the land in favor of the lender," and, "such a lien will be given precedence over a mortgage on the land taken by a party who has notice of the rights of the equitable mortgagee."

The case of *Rogers v. Trumble*, 86 Neb. 316, is in many of its aspects similar to the case at bar. In that case it was held that the rights of the mortgagee were superior to those of the landlord. There the lease contained provisions essentially the same as the lease in the case at bar, but in the *Rogers* case the mortgagee had no notice or knowledge of the equitable rights of the landlord, and was held to be a good faith mortgagee.

Under the facts as ·disclosed· by this record, it seems clear that the intervener was not a good faith· mortgagee as against plaintiffs' rights. In *State Bank of Lushton v. Kelly Co.,* 49 Neb. 242, it was held that a mortgagee in good faith is one who takes a ·chattel mortgage to secure a debt actually and justly. owing to him, .whether pre-existing or not, without actual or constructive notice of prior equities against the mortgaged property.

We do not consider there is anything in *Skala v. Michael, ante,* p. 305, contrary to the doctrine herein announced.

Under the evidence in this case, we are clearly of the opinion that the trial court was right in holding that the plaintiffs' equities were superior to those of the intervener, and in awarding a judgment against the intervener. The judgment of the district court is, therefore,

AFFIRMED.